IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELVIRA DE LA ROSA, individually, and as
Personal Representative of the Wrongful Death
Estate of Javier De La Rosa, and as parent and
next friend of ISMAEL DE LA ROSA,
ISAIAH DE LA ROSA, and REBEKA DE LA
ROSA, minors; and JONATHAN DE LA ROSA,

        Plaintiffs,

vs.                                                                                     No. CIV 15-0283 JB/KK

RELIABLE, INC., a New Mexico domestic
for-profit corporation; COOPER TIRE &
RUBBER COMPANY, a foreign corporation
doing business in the State of New Mexico;
and FORD MOTOR COMPANY, a foreign
corporation doing business in the State of New
Mexico,

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Opposed Motion to

Remand, filed May 6, 2015 (Doc. 20)("Motion to Remand"); and (ii) Defendant Reliable, LLC's

Motion to Amend Notice of Removal to the United States District Court for the District of New

Mexico, filed May 8, 2015 (Doc. 21)("Motion to Amend"). The Court held a hearing on June

22, 2015. The primary issues are (i) whether Defendant Reliable, Inc. ("Defendant Reliable")[1]

can establish that the Court had diversity jurisdiction over this case when the Plaintiffs filed the

---

[1]This Memorandum Opinion and Order concerns a corporation and two limited liability
companies all of which have the same name -- Reliable. For clarity, the Court will refer to the
New Mexico corporation as "Reliable, Inc.," to the New Mexico limited liability company as
"Reliable, LLC NM," and to the Delaware limited liability company as "Reliable, LLC DE."
When the Court is referring to the Defendant in this case, it will use simply the name "Defendant
Reliable."

Complaint for Wrongful Death and Loss of Consortium and Other Damages Under the New Mexico Wrongful Death Act and New Mexico Statutory and Common Law, filed in state court on January 12, 2015, filed in federal court on April 7, 2015 (Doc. 1-2)("Complaint"); and (ii) whether the Court should permit Defendant Reliable to amend the Notice of Removal to the United States District Court for the District of New Mexico, filed April 7, 2015 (Doc. 1)("Notice of Removal").  Because Defendant Reliable cannot show that it was no longer a New Mexico citizen when the Plaintiffs filed the Complaint, the Court will grant the Motion to Remand and will remand the case to state court.  Additionally, because the Motion to Amend does not allege a new jurisdictional theory, but alleges only additional facts to cure a technical defect in the Notice of Removal, the Court will grant the Motion to Amend.

## PROCEDURAL BACKGROUND

The Plaintiffs filed suit in state court, alleging a number of state law causes of action that arise out of a fatal car accident that occurred because of an allegedly defective tire.  See Complaint at 1.  The Plaintiffs name, as Defendants, "Reliable, Inc., a New Mexico domestic for-profit corporation," Cooper Tire & Rubber Company, and Defendant Ford Motor Company. Complaint at 1 (capitalization altered for readability).  Against Cooper Tire, the Plaintiffs allege causes of action for Defective Design, Manufacturing, and Marketing, Negligence, Breach of Express and Implied Warranties, Strict Liability, and Punitive and Exemplary Damages.  See Complaint ¶¶ 160-124, at 4-25.  Against Ford Motor, the Plaintiffs allege causes of action for Strict Liability, Breach of Express and Implied Warranties, Negligence, and Punitive and Exemplary Damages.  See Complaint ¶¶ 125-41 at 25-29.  Against Reliable, Inc. they allege causes of action for Negligence, Strict Liability, Breach of Express and Implied Warranties, and Punitive and Exemplary Damages.  See Complaint ¶¶ 142-61, at 29-32.

1.    **Notice of Removal.**

Defendant Reliable removed the case to federal court on April 7, 2015.  See Notice of Removal at 1.  Defendant Reliable asserts that the Plaintiffs misnamed it in the Complaint as "Reliable, Inc.," but that its name is "Reliable LLC."  Notice of Removal at 1.  Defendant Reliable asserts that each of the Plaintiffs was, or is, a New Mexico citizen.  See Notice of Removal ¶¶ 2-5, at 2.  It contends that, on December 31, 2014, the president of Reliable, Inc. executed a plan to convert Reliable, Inc. from a New Mexico corporation into a New Mexico limited liability company, Reliable, LLC ("Reliable, LLC NM").  Notice of Removal ¶ 7, at 2 (citing Plan of Conversion of Reliable, Inc. into Reliable, LLC, filed April 7, 2015 (Doc. 1-3)("Plan of Conversion")).  Defendant Reliable states that the plan was effective when Reliable LLC NM's Articles of Organization were filed with the State of New Mexico, see Notice of Removal ¶ 8, at 2 (citing Plan of Conversion ¶ 1, at 1), and that the Articles of Organization were filed in New Mexico on January 12, 2015, see Notice of Removal ¶ 9, at 3 (citing Statement of Acceptance of Appointment by Designated Initial Registered Agent, filed April 7, 2015 (Doc. 1-4)("Articles of Organization"); Letter Approving Statement of Conversion and Articles of Organization, filed April 7, 2015 (Doc. 1-5)("Letter Approving Conversion")).  Reliable asserts that the New Mexico Secretary of State's office[2] approved and filed the Plan of Conversion and the Articles of Organization on January 12, 2015.  See Notice of Removal ¶ 10, at 3.

---

[2]Before July 1, 2013, the New Mexico Public Regulation Commissions oversaw corporate chartering in New Mexico; on July 1, 2013, the New Mexico Secretary of State assumed responsibility of chartering corporations.  See N.M. Stat. Ann. § 8-4-7 ("As of July 1, 2013, the secretary of state . . . shall assume responsibility for chartering corporations as provided by law, including the performance of the functions of the former corporations bureau of the public regulation commission.").

Defendant Reliable states that, on December 31, 2014, the authorized representatives signed the Agreement and Plan of Merger of Reliable LLC into Reliable LLC, filed April 7, 2015 (Doc. 1-6)("Agreement of Merger"), and the Articles of Merger of Reliable, LLC and Reliable, LLC, filed April 7, 2015 (Doc. 1-7)("Articles of Merger").  Notice of Removal ¶¶ 11-12, at 3.  It contends that, on January 12, 2015, the New Mexico Office of the Secretary of State received and confirmed that the Agreement of Merger conformed with the law.  See Notice of Removal ¶ 13, at 3.  Defendant Reliable says that, on January 12, 2015, at 8:21 a.m. Eastern Standard Time ("EST"), Reliable, LLC ("Reliable, LLC DE") was formed under Delaware laws.  See Notice of Removal ¶ 14, at 3 (citing State of Delaware Limited Liability Company Certificate of Formation of Reliable, LLC, filed April 7, 2015 (Doc. 1-9)("Delaware Certificate of Formation")).

Defendant Reliable argues that the Complaint was filed in New Mexico state court on January 12, 2015, at 8:34 a.m. MST.[3]  See Notice of Removal ¶ 1, at 1-2.  It contends that diversity jurisdiction is determined at the time the Complaint is filed, and that, when the Complaint was filed, Reliable, Inc. no longer existed, because it had been converted into Reliable, LLC NM, and then merged into Reliable, LLC DE.  See Notice of Removal ¶¶ 15-16, at 3.  Defendant Reliable asserts that, on January 12, 2015, at 8:34 MST, Reliable, LLC DE was the proper party to this lawsuit.  See Notice of Removal ¶ 17, at 3.  Defendant Reliable argues that a limited liability company is deemed to be a citizen of each state in which its members reside, and that none of Reliable, LLC DE's members are residents or citizens of New Mexico.

_____

[3]Defendant Reliable does not state, in the Notice of Removal, that its asserted time for when the Complaint was filed is based on Mountain Standard Time, but because the Complaint was filed in New Mexico state court, because the time stamp on the Complaint indicates that it was filed at 8:34:04 a.m., and because New Mexico is in the Mountain Time Zone, the Court concludes that Complaint was filed at 8:34 a.m. MST, and not at 8:34 in some other time zone.

See Notice of Removal ¶¶ 18-19, at 4.  Defendant Reliable maintains that, because Ford and Cooper Tire are foreign corporations with principal places of business in states other than New Mexico, there is complete diversity of citizenship between the Plaintiffs and the Defendants.  See Notice of Removal ¶¶ 23-26, at 4.  Reliable states that the Plaintiffs served Reliable, Inc. on March 11, 2015, and that, although the Complaint does not state a specific monetary demand, it is over $75,000.00.  See Notice of Removal ¶ 22, at 4; id. ¶¶ 27-29, at 4-5.

**2.       The Motion to Remand.**

The Plaintiffs filed the Motion to Remand on May 6, 2015.  See Motion to Remand at 1. The Plaintiffs argue that Defendant Reliable is unable to establish that it converted to a Delaware limited liability company, that Defendant Reliable's corporate reorganization appears to be a scheme to manufacture diversity jurisdiction, and that Defendant Reliable fails to establish the citizenship of all necessary entities.  See Motion to Remand at 1.  They maintain that Reliable, Inc. became Reliable, LLC DE only after the State of New Mexico received the Articles of Organization and the Plan of Conversion on January 12, 2015, but that Defendant Reliable cannot show what time of day the State of New Mexico received those documents.  See Motion to Remand at 2 & 4.  The Plaintiffs contend that Defendant Reliable -- the removing party -- has the burden of proving that removal was proper.  See Motion to Remand at 3-4.

The Plaintiffs argue that, if the New Mexico Secretary of State received the filings after 8:34 a.m. Mountain Standard Time ("MST"), it would not affect the Court's jurisdiction, because a change of citizenship after filing suit cannot be used to create or defeat jurisdiction.  See Motion to Remand at 4 (citing Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 571 (1892); Slaughter v. Toye Bros. Yellow Cab Co., 359 F.2d 954, 956 (5th Cir. 1966); McDaniel v. Loya, 304 F.R.D. 617, 625 (D.N.M. 2015)(Browning, J.)).  They maintain that, because the

Court cannot reasonably ascertain Defendant Reliable's citizenship as of 8:34 a.m. MST, the Court should remand the case to state court.  <u>See</u> Motion to Remand at 4-5.

The Plaintiffs contend that Defendant Reliable's reorganization appears to be a sham to manufacture diversity jurisdiction.  <u>See</u> Motion to Remand at 5.  They assert that 28 U.S.C. § 1359 prohibits the exercise of jurisdiction in the face of collusive conveyances.  <u>See</u> Motion to Remand at 5.  The Plaintiffs state that § 1359 also prohibits collusive formation and conversion of entities, and that the Court must consider whether Defendant Reliable's conduct was improper or collusive.  <u>See</u> Motion to Remand at 6 (citing <u>Lester v. McFaddon</u>, 415 F.2d 1101, 1104 (4th Cir. 1969)).  They argue that courts have held that corporations violate § 1359 when they merge with other corporations to manufacture diversity jurisdiction, even if the restructure had other purposes, and when a parent corporation takes title of a subsidiary for the purpose of invoking federal jurisdiction.  <u>See</u> Motion to Remand at 6-7 (citing <u>Toste Farm Corp. v. Hadbury</u>, 70 F.3d 640, 641-42 (1st Cir. 1995); <u>Green & White Const. Co. v. Cormat Const. Co.</u>, 361 F. Supp. 125, 128 (N.D. Ill. 1973)).  The Plaintiffs contend that courts recognize that jurisdictional rules should not be used to perpetrate a fraud on the court and that, if there is a fraud, courts should not elevate form over substance, but should accomplish whatever piercing or adjustment is necessary to protect the court's jurisdiction.  <u>See</u> Motion to Remand at 7.

The Plaintiffs argue that the record does not reveal the citizenship of all necessary entities.  <u>See</u> Motion to Remand at 7.  They maintain that the citizenship of a limited liability company is every state in which its members are citizens, and that, while Defendant Reliable asserts that it is a limited liability company, in the Notice of Removal, it does not identify the members of the newly created limited liability company or disclose their citizenship.  <u>See</u> Motion to Remand at 8.  The Plaintiffs contend that, in the Notice of Removal, Defendant

Reliable stated only that none of Reliable LLC DE's members are residents of New Mexico.  See Motion to Remand at 8.  The Plaintiffs assert that, in Affordable Communities of Missouri v. EF & A Capital Corp., No. CIV 08-1509 CAS, 2008 WL 4966731 (E.D. Mo. Nov. 19, 2008), the Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri, found that the statement that no member of the defendant limited liability company was a citizen of Nevada was insufficient to establish diversity jurisdiction.  See Motion to Remand at 8.  The Plaintiffs maintain that the Notice of Removal is fatally defective, because it does not account for the citizenship of all necessary entities.  See Motion to Remand at 9.

Defendant Reliable responded to the Motion to Remand on June 3, 2015.  See Reliable, LLC's Response to Plaintiffs' Motion to Remand at 1, filed June 3, 2015 (Doc. 34)("Remand Response").  It begins the Remand Response by setting forth the case's factual background.  See Remand Response at 2-4.  Defendant Reliable contends that, on June 19, 2009, Elvira De La Rosa ("E. De La Rosa") purchased a 2006 Ford Ranger from Reliable, Inc., and that, on June 4, 2014, Javier De La Rosa ("J. De La Rosa") was in car accident while driving the Ford Ranger.  See Remand Response at 2.  Defendant Reliable states that, on June 19, 2009, it was one of approximately sixty-five automobile dealerships -- each of which was a privately held entity -- which the Van Tuyl family individually owned.  See Remand Response at 2.  Defendant Reliable asserts that, in October, 2014, Berkshire Hathaway announced that it would acquire from the Van Tuyl family a controlling interest in their car dealerships.  See Remand Response at 2.  Defendant Reliable states that, as a part of that acquisition, Reliable, Inc. was to be converted into Reliable, LLC NM and then merged into Reliable, LLC DE.  See Remand Response at 2.

Defendant Reliable argues that the Agreement of Merger states that the merger should become effective at the time of filing the certificate of merger and that, at the effective time, each

separate entity would cease to exist.  See Remand Response at 3.  It contends that the Articles of Merger were executed on December 31, 2008, but the merger was not deemed effective until January 12, 2015.  See Remand Response at 3.  Defendant Reliable maintains that the Delaware Certificate of Formation stated that it would be effective on January 12, 2015, and that the Delaware Office of the Secretary of State certified the formation of Reliable, LLC DE at 8:21 a.m. EST on January 12, 2015.  See Remand Response at 3.  It states that the Delaware Office of the Secretary of State certified the merger of Reliable, LLC NM and Reliable, LLC DE at 8:23 a.m. EST on January 12, 2015.  See Remand Response at 3 (citing Certificate of Merger, filed June 3, 2015 (Doc. 34-4)("Certificate of Merger")).  Defendant Reliable argues that, at that time, Reliable, LLC NM became a Delaware citizen.  See Remand Response at 3-5 (citing Del. Code Ann. tit 8, § 259(a)).  It asserts that the Plaintiffs filed the Complaint at 8:34 a.m. MST on January 12, 2015, over two hours after Reliance, Inc. converted into Reliance, LLC NM and merged with Reliance, LLC DE.  See Remand Response at 4.  Defendant Reliable maintains that, before being served with the Complaint on March 11, 2015, it and its predecessors were unaware of J. De La Rosa's death and a potential lawsuit.  See Remand Response at 4.

Defendant Reliance asserts that, at 8:21 a.m. EST, when the Delaware Certificate of Formation was filed with the Delaware Secretary of State, Reliable, LLC DE came into existence.  See Remand Response at 4-5 (citing Del. Code Ann. tit. 8, § 106; Nord Serv., Inc. v. Palter, 548 F. Supp. 2d 366, 375 (E.D. Tex. 2008); DiAntonio v. Ament, CIV A. No. 94C-05-089, 1995 WL 339072 (Del. Super. Ct. May 10, 1995)(unpublished); Rest. Equip. Serv. v. Cohen, CIV A. No. 90A-JN 3, 1991 WL 113386, at *2 (Del. Super. Ct. Apr, 3, 1991)(unpublished); Cleary v. N. Del. A-OK Campground, Inc., CIV A. No. 85C-OC-70, 1987 WL 28317, at *4 (Del. Super. Ct. Dec. 9, 1987)(unpublished)).  Defendant Reliable states that, as

the surviving entity, Reliable, LLC DE's citizenship is the relevant one, because the separate existence of all constituent entities ceased at the time of the merger.  See Remand Response at 5-6 (citing Del. Code Ann. tit. 8 § 259(a); Meadows v. Bicrodyne Corp., 785 F.2d 670 (9th Cir. 1986); Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp., 523 F.2d 543, 549 (7th Cir. 1975)).  Defendant Reliable contends that, for diversity purposes, federal courts consider the citizenship of the surviving corporation.  See Remand Response at 6.  It maintains that the Agreement of Merger states that Reliable, LLC DE shall file the Delaware Certificate of Formation with the Delaware Secretary of State, that the merger shall be effective at the time in which the Delaware Certificate of Formation is filed with the Delaware Secretary of State, and that Reliable, LLC NM shall cease to exist at the effective time.  See Remand Response at 6.

Defendant Reliable asserts that the timing of the New Mexico corporate filings does not determine its citizenship.  See Remand Response at 7.  It states that New Mexico courts give full faith and credit to other states' acts.  See Remand Response at 7 (citing 28 U.S.C. § 1738; Huntington Nat. Bank v. Sproul, 1993-NMSC-051, ¶ 38, 861 P.2d 935, 947).  Defendant Reliable argues that New Mexico courts should give full faith and credit to Delaware law, which dictates that Reliable, LLC DE came into existence on January 12, 2015, at 8:21 a.m. EST, and that Reliable, LLC NM became a Delaware citizen on January 12, 2015, at 8:23 EST, when it merged with Reliable LLC DE.  See Remand Response at 7.  Defendant Reliable also argues that the Agreement of Merger's plain language states that Reliable, LLC NM ceased to exist when it merged with Reliable, LLC DE.  See Remand Response at 8.

Concerning the Plaintiffs' jurisdiction-manufacturing argument, Defendant Reliable states that its reorganization and merger were done for legitimate business reasons, wholly unrelated to this lawsuit, and that they were the result of Berkshire Hathaway's acquisition of the

Van Tuyl family's dealerships.  <u>See</u> Remand Response at 8.  Reliable contends that it needs to demonstrate only a legitimate, non-pretextual reason for the merger.  <u>See</u> Remand Response at 8-9.  It maintains that the conversion of Reliable, Inc. into Reliable, LLC NM and the merger of Reliable, LLC NM with Reliable, LLC DE occurred because of the Berkshire Hathaway's acquisition, and that, when the reorganization was formulated and later enacted, Defendant Reliable had no knowledge of J. De La Rosa's death or of a potential lawsuit.  <u>See</u> Remand Response at 9-11.

Concerning whether the Notice of Removal is effective on its face, Defendant Reliable asserts that <u>Affordable Communities of Missouri v. EF & A Capital Corp.</u> is not controlling, and that, even if it were, Defendant Reliable cured the defect with the Motion to Amend.  <u>See</u> Remand Response at 11.  Defendant Reliable contends that the United States Court of Appeals for the Tenth Circuit and the Court recognize a defendant's right to cure technical defects in a notice of removal.  <u>See</u> Remand Response at 11 (citing <u>Jenkins v. MTGLQ Investors</u>, 218 F. App'x 719, 723 (10th Cir. 2007)(unpublished); <u>Zamora v. Wells Fargo Home Mortg.</u>, 831 F. Supp. 2d 1284, 1292 (D.N.M. 2011)(Browning, J.)).  Defendant Reliable states that, when a defendant makes simple errors in its jurisdictional allegations, the Court should not exalt form over substance, but should allow the defendant to cure the defects.  <u>See</u> Remand Response at 11-12 (citing <u>Hendrix v. New Amsterdam Cas. Co.</u>, 390 F.2d 299, 300-02 (10th Cir. 1968); <u>D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.</u>, 608 F.2d 145, 146-47 (5th Cir. 1979)).  Defendant Reliable argues that, before the Plaintiffs filed the Motion to Remand, it disclosed the identity of its two members and the fact that neither were New Mexico citizens.  <u>See</u> Remand Response at 12.  It maintains that, if the Notice of Removal contained an error, it was a de minimis technical error that has been cured.  <u>See</u> Remand Response at 12.

The Plaintiffs replied to the Remand Response on June 8, 2015.  See Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Remand, filed June 8, 2015 (Doc. 41)("Remand Reply").   The Plaintiffs argue that Defendant Reliable's corporate conversion shows that Defendant Reliable cannot establish that Reliable, Inc. ceased to exist as a New Mexico citizen before 8:34 a.m. MST.  See Remand Reply at 1-2.  They contend that, in the Notice of Removal, Defendant Reliable stated that the conversion from Reliable, Inc. to Reliable, LLC NM was effective when the State of New Mexico received the Articles of Organization, but that, now realizing that it cannot prove when the State of New Mexico received the Articles of Organization, it is arguing that the conversion took place when the State of Delaware received the Certificate of Merger.  See Remand Reply at 2.  The Plaintiffs maintain that, when the Certificate of Merger was filed, Reliable, Inc. still existed and Reliable, LLC NM had not yet been created.  See Remand Reply at 2.

The Plaintiffs assert that, while the Articles of Organization are not time stamped, they were not filed until after 8:00 a.m. MST, because that is when the New Mexico Secretary of State's offices open.  See Remand Reply at 2.  The Plaintiffs state that there are three possible interpretations of Reliable's reorganization:

1. The Delaware certificate of merger filed at 6:23 AM MST had no legal effect whatsoever, because Reliable LLC (NM) did not exist.  Under this interpretation, Defendant continues to be a New Mexico citizen.

2. The certificate of merger filed at 6:23 AM MST became legally effective at whatever time later in the day that the New Mexico Secretary of State received the Articles of Organization for Reliable LLC (NM).  Under this interpretation, Defendant became a Delaware citizen, but cannot show that occurred prior to the filing of Plaintiff's complaint at 8:34 MST.

3. The certificate of merger between Reliable LLC (DE) and the not-yet-existing Reliable LLC (NM) was effective at 6:23 AM MST.  However, at this point, Reliable Inc. was a stranger to the transaction.  Reliable Inc.'s citizenship only changed when it filed a Plan of Conversion in New

> Mexico converting into Reliable LLC (NM). Defendant cannot show this
> occurred prior to the filing of Plaintiff's complaint at 8:34 MST.

Remand Reply at 2-3.  The Plaintiffs argue that Defendant Reliable initially asserted that the second interpretation is correct, but that, after realizing it cannot prove the timing of the New Mexico filings, it is arguing that the merger ceased Reliable, Inc.'s corporate existence.  See Remand Reply at 3.  The Plaintiffs maintain, however, that Reliable, Inc. continued to exist until the Articles of Organization were filed.  See Remand Reply at 3-4.

Regarding the Agreement of Merger's language, the Plaintiffs contend that the Agreement of Merger concerns Reliable, LLC NM and does not mention Reliable, Inc.  See Remand Reply at 4.  The Plaintiffs argue that the Agreement of Merger contemplated that Reliable, LLC NM would exist at the effective time.  See Remand Reply at 4.  They assert that, because the merger did not involve Reliable, Inc., the merger did not affect Reliable, Inc. until it took affirmative steps to convert into Reliable, LLC NM.  See Remand Reply at 4.

3.      **The Motion to Amend.**

On May 8, 2014, Defendant Reliable filed the Motion to Amend.  See Motion to Amend at 1.  Defendant Reliable asserts that, in the Notice of Removal, it alleges that none of its members are citizens of New Mexico, and that, in the Corporate Disclosure Statement, filed April 15, 2015 (Doc. 16)("Corporate Disclosure"), it identified its two members as Berkshire Hathaway Automotive, Inc. and Reliable Holdco, Inc.  See Motion to Amend ¶¶ 1-3, at 1-2. Reliable states that, while its Corporate Disclosure identifies its two members and the Notice of Removal states that its members are not New Mexico citizens, the Notice of Removal does not specifically identify its two members.  See Motion to Amend ¶ 5, at 2.  It contends that it has a right to cure technical defects in the Notice of Removal.  See Motion to Amend ¶¶ 6-7, at 2-3. Defendant Reliable requests that the Court allow it to amend the Notice of Removal to identify

its two members and to identify their citizenships and principal places of business. See Motion to Amend ¶ 8, at 3. It asserts that this amendment would merely cure a possible technical defect without alleging a new basis for jurisdiction. See Motion to Amend ¶ 9, at 3. Defendant Reliable attaches an amended copy of the Notice of Removal to the Motion to Amend. See Amended Notice of Removal to the United States District Court for the District of New Mexico, filed May 8, 2015 (Doc. 21-1)("Amended Notice of Removal").

The Plaintiffs responded to the Motion to Amend on May 21, 2015. See Plaintiff's [sic] Response in Opposition to Defendant's Motion to Amend Notice of Removal [Doc. 21], filed May 21, 2015 (Doc. 28)("Amend Response"). The Plaintiffs assert that federal courts routinely reject attempts to amend a notice of removal after the expiration of the thirty-day period to supply omitted allegations of citizenship. See Amend Response at 1. The Plaintiffs contend that, in Van Horn v. Western Electric Co., 424 F. Supp. 920, 923 (E.D. Mich. 1977), the court denied the defendant's request to amend the notice of removal, when the defendant alleged that it was diverse from the plaintiff, but failed to allege specific facts, including where its principal place of business was. See Amend Response at 1-2. The Plaintiffs state that, in Barnhill v. Insurance Company of North America, 130 F.R.D. 46 (D.S.C. 1990), the court took a restrictive view of amending a notice of removal to allege the defendant's place of incorporation and principal place of business, because of a number of policy considerations:

> (i) preventing federal court infringement upon the rightful independence and sovereignty of state courts; (ii) ensuring that judgments obtained in a federal forum are not vacated on appeal because of improvident removal; (iii) reducing uncertainty as to the court's jurisdiction in the marginal cases, which a more liberal construction of the removal statute would promote; (iv) permitting amendment past the thirty-day time limit would eviscerate the specific time provision Congress enacted; and (v) state court hostility toward non-resident defendants has been significantly reduced since diversity jurisdiction was created.

Amend Response at 2 (quoting Barnhill v. Ins. Co. of N. Am., 130 F.R.D. at 50-51)(citations omitted in Amended Response, but not in case).

The Plaintiffs argue that, in Richmond, Fredericksburg & Potomac Railroad Co. v. Intermodal Services, Inc., 508 F. Supp. 804 (E.D. Va. 1981), the court held that an amendment under 28 U.S.C. § 1653 to correct an omission in the notice of removal -- specifically, an allegation that that defendant's principal place of business created diversity -- was not permitted outside of 28 U.S.C. § 1446(b)'s thirty-day period. See Amend Response at 3. The Plaintiffs maintain that a number of courts do not permit additional allegations of citizenship after the thirty-day period. See Amend Response at 3-4 (citing Thomson v. Gillen, 491 F. Supp. 24, 27 (E.D. Va. 1980); Hubbard v. Tripp, 611 F. Supp. 895, 896-97 (E.D. Va. 1985); Jennings Clothiers of Ft. Dodge, Inc. v. U.S. Fid. & Guar. Co., 496 F. Supp. 1254, 1255 (N.D. Iowa 1980); Outdoor World Corp. v. Calvert, 618 F. Supp. 446, 448 (E.D. Va. 1985); UMLIC Consol., Inc. v. Spectrum Fin. Servs. Corp., 665 F. Supp. 2d 528, 533 (W.D.N.C. 2009)).

Defendant Reliable replied to the Amend Response on June 4, 2015. See Reliable, LLC's Reply in Support of Motion to Amend Notice of Removal, filed June 4, 2015 (Doc. 36)("Amend Reply"). It maintains that there were no technical errors in the Notice of Removal, and that, even if there were, the Tenth Circuit's well-established law freely allows for leave to cure such an error. See Amend Reply at 1-2. Defendant Reliable argues that the Plaintiffs rely on district court cases from outside the Tenth Circuit to support their thirty-day-period argument that is contrary to Tenth Circuit law. See Amend Reply at 2. Defendant Reliable distinguishes Van Horn v. Western Electric Co. and Barnhill v. Insurance Company of North America by arguing that they involved corporate defendants, while it is a limited liability company, and that it stated in the Notice of Removal that none of its members are New Mexico

citizens.  See Amend Reply at 2-3.  Defendant Reliable also asserts that it has produced evidence showing that is members are not New Mexico citizens.  See Amend Reply at 3.

### 4.      The June 22, 2015, Hearing.

The Court held a hearing on June 22, 2015.  See Transcript of Hearing (taken June 22, 2015)("Tr.").[4]  The Court began the hearing by telling the parties that the issue in the case seemed to be whether private parties, through a contractual agreement, could eliminate a corporation, or whether -- as the Court thought to be the case -- the state must be the one to dissolve the corporation.  See Tr. at 2:9-3:2 (Court).  The Court noted that, because the Defendants have the burden of proving that the Court has jurisdiction, and because it is unlikely anyone can show that Reliable, Inc. was not in existence when the Plaintiffs filed the lawsuit, it should probably grant the Motion to Remand.  See Tr. at 3:2-12 (Court).  As for the Motion to Amend, the Court said that, because the additions do not change the theory for removal, it was inclined to grant the Motion to Amend.  See Tr. at 3:13-21 (Court).

For the Motion to Amend, Defendant Reliable mostly repeated its arguments from the briefing.  See Tr. at 4:6-7:2 (Salazar-King).  The Plaintiffs did not argue against the Court granting the Motion to Amend, but, instead, said that they understand and appreciate the Court's leniency in granting amendments.  See Tr. at 7:6-24 (Ball, Court).  The Court, thus, granted the Motion to Amend.  See Tr. at 8:6-8 (Court).

The Court again noted that it believed that a New Mexico corporation could not come into existence or be dissolved without the State of New Mexico's blessing, and that, if Reliable, Inc. existed on the books in New Mexico when the Plaintiffs filed the Complaint, it was the defendant in the case.  See Tr. at 8:16-9:13 (Ball, Court).  The Plaintiffs agreed that dissolving a

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

corporation is a function of the state, and that a New Mexico corporation cannot dissolve itself through a contractual agreement or though forming another company in Delaware.  See Tr. at 9:14-10:6 (Ball).  They contended that the Motion to Remand comes down to timing and that, because Defendant Reliable carries the burden of proof, which it cannot meet, the Court must remand the case to state court.  See Tr. at 10:10-16 (Ball).

Defendant Reliable asserted that, initially, there were three issues before the Court, but that, because the Court granted the Motion to Amend, the second has been resolved.  See Tr. at 11:1-8 (Salazar-King).  Defendant Reliable used a demonstrative to set forth the timeline of events: (i) on June 19, 2009, E. De La Rosa purchased the 2006 Ford Ranger from Reliable Nissan, which Reliable, Inc. owned; (ii) on June 4, 2014, J. De La Rosa was killed in a car accident involving the 2006 Ford Ranger; (iii) in October, 2014, Berkshire Hathaway announced that it would acquire the car dealerships and that the acquisitions were to be executed in the first quarter of 2015; (iv) on December 31, 2014, the Plan of Conversion and the Agreement of Merger were executed; (v) on January 12, 2015, at 8:21 a.m. EST, the Delaware Secretary of State certified the merger of Reliable, LLC DE and Reliable, LLC NM; and (vi) on January 12, 2015, at 8:34 a.m. MST, the Plaintiffs filed their Complaint.  See Tr. at 11:12-12:15 (Salazar-King).  Defendant Reliable maintained that it was converted to Reliable, LLC NM and then merged with Reliable, LLC DE at 8:23 a.m. EST on January 12, 2015.  See Tr. at 12:11-15 (Salazar-King).

The Court asked Defendant Reliable if its position is that, on December 31, 2014, when the Plan of Conversion was executed, Reliable, Inc. was converted into Reliable, LLC NM, and Defendant Reliable said that statement was its position.  See Tr. at 13:6-13 (Salazar-King, Court).  The Court asked whether state or federal law should apply to determine when Reliable,

Inc. ceased to exist, and Defendant Reliable said state law, and provided the Court with two Delaware statutes concerning the formations of corporations and the effect of merging two corporate entities.  See Tr. at 13:18-15:9 (citing Del. Code Ann. tit. 8, § 106; Del. Code Ann. tit. 8, § 259).  Defendant Reliable contended that, when the Articles of Incorporation were filed in Delaware, Reliable, Inc. ceased to exist, pursuant to Section 259 to Title 8 of the Delaware Code. See Tr. at 15:14-16:2 (Salazar-King, Court).  Defendant Reliable argued that, in Meadows v. Bicrodyne Corp., the United States Court of Appeals for the Ninth Circuit held that a California corporation had been dissolved and subsumed into a Delaware corporation at the time of the merger, and that, for the Court to grant the Motion to Remand, it would have to find that Reliable, Inc. and Reliable, LLC[5] existed simultaneously.  See Tr. at 16:2-11 (Salazar-King).

Defendant Reliable asserted that, on January 12, 2015, it no longer existed, because the Letter Approving Conversion dissolved Reliable, Inc.   See Tr. at 17:10-18:1 (Salazar-King, Clemens, Court).  The Court said that, while Reliable, Inc. may have dissolved on January 12, 2015, Defendant Reliable cannot show what time it dissolved and that Defendant Reliable has the burden of showing that it dissolved before 8:34 a.m. MST.  See Tr. at 18:8-12 (Court). Defendant Reliable agreed with the Court that, as of 7:59 a.m. MST, Reliable, Inc. still existed, because the New Mexico Secretary of State's office did not open until 8:00 a.m. MST, and that, because the Secretary of State does not time stamp articles of incorporation, it is unknown at what precise time of day Reliable, Inc. was dissolved.  See Tr. at 18:17-19:4 (Salazar-King, Court).  Defendant Reliable maintained, however, that, while the New Mexico Secretary of State does not use a time stamp, under the logical sequence of events, for Reliable, LLC DE to be merged with Reliable, LLC NM, Reliable, Inc. must have been dissolved.  See Tr. at 19:15-24

---

[5]It is unclear whether Defendant Reliable was referring to Reliable, LLC NM or Reliable, LLC DE.

(Salazar-King).  Again, Defendant Reliable said that, more than two hours before the Plaintiffs filed the Complaint, Reliable, Inc. had been dissolved and converted into Reliable, LLC NM, and then merged into Reliable, LLC DE.  See Tr. at 20:13-25 (Salazar-King).

The Court asked Defendant Reliable why § 53-19-60 of the New Mexico Statutes Annotated did not govern when Reliable, Inc. dissolved, and Defendant Reliable said that it agreed with the Court that New Mexico has control over the dissolution of its own corporations. See Tr. at 21:1-20 (Salazar-King, Court).  Immediately afterwards, however, Defendant Reliable went back to arguing that Delaware statutes caused Reliable, Inc. to dissolve at a certain time. See Tr. at 21:25-22:9 (Salazar-King, Court).  Defendant Reliable conceded that § 53-19-60 governed when conversion takes effect and that, because the State of New Mexico does not time stamp, it cannot establish the specific time when the articles were executed in New Mexico.  See Tr. at 22:16-23 (Salazar-King).  Yet, it continued to argue that the Agreement of Merger and conflict of laws require Delaware law to apply.  See Tr. at 22:23-23:11 (Salazar-King).

The Plaintiffs replied that they did not believe that Defendant Reliable did anything nefarious and that the timing of the reorganization was merely a coincidence.  See Tr. at 25:1-12 (Ball).  They maintained that Defendant Reliable cannot prove the time at which Reliable, Inc. was converted to Reliable, LLC NM.  See Tr. at 25:13-26:14 (Ball).  The Plaintiffs argued that, while they do not believe that Defendant Reliable did any wrongdoing in this case, if the Court does not require Defendant Reliable to establish the exact time in which Reliable, Inc. dissolved, other unscrupulous defendants could take advantage of the judicial system by reorganizing their corporate structures immediately after a lawsuit is filed.  See Tr. at 26:14-27:7 (Ball).  The Court told the parties that it was inclined to grant the Motion to Remand, but that it needed to look at the issue further.  See Tr. at 27:10-15 (Court).

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"[6]   Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012

---

[6]The Constitution of the United States permits -- but does not mandate -- Congress to authorize an even broader scope of federal subject-matter jurisdiction than Congress has chosen to enact: "The judicial power shall extend to all cases, in law and equity, . . . between citizens of different states."  U.S. Const. art. III, § 2, cl. 1.  This clause permits federal jurisdiction: (i) in cases with minimum diversity -- those in which any one party is a citizen of a different state than any opposing party -- in addition to cases with complete diversity; and (ii) in cases in which the amount in controversy is below the statutory amount-in-controversy requirement.  See State Farm Fire & Cas. v. Tashire, 386 U.S. 523 (1967).

For the federal courts to have jurisdiction over a matter, however, jurisdiction must be both constitutionally empowered and congressionally authorized.  The Honorable John J. Sirica, then-Chief United States District Judge for the District of Columbia, has stated:

> For the federal courts, jurisdiction is not automatic and cannot be presumed. Thus, the presumption in each instance is that a federal court lacks jurisdiction until it can be shown that a specific grant of jurisdiction applies.  Federal courts may exercise only that judicial power provided by the Constitution in Article III and conferred by Congress.  All other judicial power or jurisdiction is reserved to the states.  And although plaintiffs may urge otherwise, it seems settled that federal courts may assume only that portion of the Article III judicial power which Congress, by statute, entrusts to them.  Simply stated, Congress may impart as much or as little of the judicial power as it deems appropriate and the Judiciary may not thereafter on its own motion recur to the Article III storehouse for additional jurisdiction.  When it comes to jurisdiction of the federal courts, truly, to paraphrase the scripture, the Congress giveth, and the Congress taketh away.

Senate Select Comm. on Pres. Campaign Activities v. Nixon, 366 F. Supp. 51, 55 (D.D.C. 1973) (footnotes omitted).  The complete-diversity and amount-in-controversy requirements are two ways in which Congress has authorized a narrower scope of subject-matter jurisdiction than the full measure that the Constitution permits.  Congress has similarly narrowed federal-question jurisdiction.  Congress may authorize federal "arising under" jurisdiction over all cases in which "the constitution[] forms an ingredient of the original cause" of action.  U.S. Const. art. III, § 2, cl. 1 ("The judicial power shall extend to all cases, in law and equity, arising under this Constitution . . . .").

> We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the

WL 3860748, at *12 (D.N.M. Aug. 27, 2012)(Browning, J.)(citing 28 U.S.C. § 1332(a)).  As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010) (Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)).  The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation."  Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507 JB/KBM, 2012 WL 1132374, at *15 (D.N.M. March 19, 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).  The Court will discuss the two requirements in turn.

## 1.    Diversity of Citizenship.

For diversity jurisdiction purposes, a person's domicile determines citizenship.  See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678).  See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428

---

power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.

Osborn v. Bank of U.S., 22 U.S. 738, 822 (1824)(Marshal, C.J.).  The federal-question jurisdiction statute, however, requires that a substantial, actually disputed question of federal law be present on the face of the well-pleaded complaint, and that its resolution be necessary to the disposition of the claim over which jurisdiction is being asserted.  See 28 U.S.C. § 1331; Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 154 (1908).

(1991)("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").  If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth.  See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin.  The domicile of origin which the law attributes to an individual is the domicile of his parents.  It continues until another domicile is lawfully acquired.").  Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).  A corporation, on the other hand, is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)).

## 2.   Amount in Controversy.

The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold.  Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. Mar. 30, 2010) (Browning, J.).  If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims.  See Alberty v. W. Sur.

Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 WL 1608884, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14AA Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Vikram D. Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman, & Catherine T. Struve, Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955. The United States Court of Appeals

for the Tenth Circuit's decision in <u>McPhail v. Deere & Co.</u> has foreclosed such an option from a plaintiff who wishes to remain in state court.  <u>McPhail v. Deere & Co.</u> holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play."  529 F.3d at 955.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  <u>See</u> <u>Dart Cherokee Basin Operating Co. v. Owen</u>, 135 S. Ct. 547, 554 (2014).  The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation."  <u>Dart Cherokee Basin Operating Co. v. Owen</u>,. 135 S. Ct. at 554.

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  <u>See</u> <u>Huffman v. Saul Holdings LP</u>, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996)).  In a case with multiple defendants, there must be unanimous consent to removal; any one defendant may spoil removal and keep the case in state court.  <u>See</u> 28 U.S.C. § 1446(b)(2)(A).  Only true defendants have removal rights: plaintiffs

defending counterclaims and third-party defendants may not remove an action,[7] and their consent

is not required for removal if all the true defendants consent. See Hamilton v. Aetna Life & Cas.

---

[7]This view is well-established with regard to plaintiffs defending counterclaims, but is an open question in the Tenth Circuit with regard to third-party defendants. The better view, and the majority view, however, is that "defendants" as used in the removal statute refers to true defendants and not to third-party defendants. The Court wrote in Wiatt v. State Farm Insurance Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.):

> With respect to third-party defendants, courts take various views on whether they may remove cases. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d 1237, 1239 (D. Colo. 2006)(citing Monmouth-Ocean Collection Serv., Inc. v. Klor, 46 F. Supp. 2d 385 (D.N.J. 1999)). 28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants." The majority view is that third-party defendants are not "defendants" within the meaning of § 1441(a). See First Nat. Bank of Pulaski v. Curry, 301 F.3d 456, 461-62 (6th Cir. 2002); James Wm. Moore, Moore's Federal Practice § 107.11[1][b][iv] ("[T]hird-party defendants are not *defendants* within the meaning of the removal statute." (emphasis in original)). Other justifications for opposing third-party defendant removal are that it would force a plaintiff to litigate in a federal court that he did not choose and to which his adversary originally could not have removed, and that allowing removal would expand jurisdiction of federal courts in contravention of the strictly construed statutory limits on the right to removal. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239. Proponents of third-party removal, however, assert that the term "defendant" under § 1441(a) does not necessarily exclude third-party defendants, who, like other defendants, have been brought into court involuntarily and may have an interest in having a federal forum.

> . . . .

> Sister districts within the United States Court of Appeals for the Tenth Circuit have routinely held that third-party defendants that a defendant/third-party plaintiff impleads may not remove cases. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239-40; Menninger Clinic Inc. v. Schilly, No. CIV 92-4104, 1992 WL 373927, at *1-2 (D. Kan. Nov. 23, 1992); Radio Shack Franchise Dep't v. Williams, 804 F. Supp. at 152-53; Elkhart Co-op Equity Exch. v. Day, 716 F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim). These cases, however, involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-defendant impleading the third-party defendant under Rule 14(b). Arguably, some of the rationales for opposing third-party defendant removal may not apply where the plaintiff impleads a third-party defendant, because the plaintiff is the party permissively joining the third-party defendant, and in this scenario, the third-party defendant is more like a traditional defendant -- a party antagonistic to

---

Co., 5 F.3d 642 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M.

2007)(Browning, J.).

        To remove a case based on diversity, the diverse defendant must demonstrate that all of

the usual prerequisites of diversity jurisdiction are satisfied.   Under 28 U.S.C. § 1332(a), a

federal district court possesses original subject-matter jurisdiction over a case when the parties

are diverse in citizenship and the amount in controversy exceeds $75,000.00.   See 28 U.S.C.

§ 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).   Diversity between the

parties must be complete.   See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W.

Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).   In addition to the requirements of original

jurisdiction, § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may

---

        the plaintiff.   See Moore, supra, § 107.11 [1][b][iv] ("The better view . . . is that
        third-party claims are not removable, because only a party defending against
        claims asserted by a plaintiff ought to be able to remove.").   At least one court,
        however, has held that a third-party defendant [that] a plaintiff/counter-defendant
        impleads cannot remove, because the third-party defendant is not a defendant
        within the meaning of § 1441.   See Garnas v. Am. Farm Equip. Co., 502 F. Supp.
        349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

        The Tenth Circuit has not spoken definitively on the propriety of
        third-party removal.   See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240.   It
        is therefore an open question in this circuit whether a third-party defendant, who
        the plaintiff impleaded, may remove a case.

560 F. Supp. 2d at 1076 (citations omitted).   The Court ultimately concluded that it "need not
resolve this issue, because assuming, without deciding, that a third-party defendant impleaded
under rule 14(b) may attempt removal, Allstate has not met its burden to establish the Court's
diversity jurisdiction over the claims against it."   560 F. Supp. 2d at 1078.   In any case, the Court
has since held that third-party may not remove a case.   See Mach v. Triple D Supply, LLC, 773
F. Supp. 2d 1018, 1051 (D.N.M. 2011)(Browning, J.)("The Supreme Court has already
established that cross-defendants may not remand; there is no valid distinction between
cross-defendants, counter-defendants, and third-party defendants for the purposes of 28 U.S.C.
§ 1441(a).   The Court thus agrees with those courts that have held only original defendants may
remove cases under 28 U.S.C. § 1441(a).").

not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought.

> [W]e note that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)[8](alterations in original) (quoting 28 U.S.C. § 1441(b)(2)).   The forum-defendant rule applies only to cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home state on the basis of federal-question jurisdiction.   See 28 U.S.C. § 1441(b).   Last, a case cannot be removed if it began with a nondiverse party or a forum-citizen defendant, and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979); Flores-Duenas v. Briones, No. CIV 0660 JB/CG, 2013 WL 6503537, at *12 n.6, *26 (D.N.M.

---

[8]Brazell v. White is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that Brazell v. White; Browning v. American Family Mutual Insurance Co., 396 F. App'x 496 (10th Cir. 2010)(unpublished); Jenkins v. MTGLQ Investors, 218 F. App'x. 719 (10th Cir. 2007) (unpublished); Nerad v. AstraZeneca Pharmaceuticals, Inc., 203 F. App'x 911 (10th Cir. 2006) (unpublished); Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(unpublished); Watkins v. Terminix International Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226 (10th Cir. May 22, 1997)(per curiam)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Dec. 1, 2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule);[9] or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined.   These doctrines are described below.

      1.      **The Presumption Against Removal.**

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.   See Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982); Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. April 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").   The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."   McPhail v. Deere & Co., 529 F.3d at 953.   See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").   Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."   Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. at 547.   On the other hand, this strict construction and presumption against removal should not be interpreted as a

---

[9]The Tenth Circuit explained:

> The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff.   The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

DeBry v. Transamerica Corp., 601 F.2d at 488 (citation omitted).

hostility toward removal cases in the federal courts. See McEntire v. Kmart Corp., 2010 WL 553443, at *2 (citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal. Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333. "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

### 2.    The Procedural Requirements of Removal.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." Thompson v. Intel Corp., 2012 WL 3860748, at *5. A removal that does not comply with the express statutory requirements is defective, and the Court must, upon request, remand the case to state court. See Huffman v. Saul Holdings LP, 194 F.3d at 1077. See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process,

pleadings, and orders served upon such defendant or defendants in such action."  Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[10]

After the notice of removal is filed, all state-court proceedings are automatically stayed, and the other defendants in the case -- if not all defendants joined in the removal -- have thirty days to consent to the removal of the action.  See 28 U.S.C. § 1446(b)(2).  "When a civil action is removed solely under section 1441(a) [the standard removal statute, which excludes multiparty, multiforum jurisdiction], all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The failure of all defendants to consent to removal will result in remand.  The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20.  Defendants who have not been served, however, need not join in removal.  See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

---

[10]Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 ("Act"). See Thompson v. Intel Corp., 2012 WL 3860748, at *12 n.5 (discussing the Act).

Section 1447(c) permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  The Supreme Court has stated:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005).  The Tenth Circuit has limited district courts' discretion to impose costs and fees to those cases in which the removal was objectively unreasonable.  See Garret v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

### 3.    Amendment of the Notice of Removal.

In Caterpillar, Inc. v. Lewis, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court.  See 519 U.S. at 70-78.  Citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court."  Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished).  In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed, on appeal, defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship.  See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . .").  The Seventh Circuit

nevertheless permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction.  See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal.  See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007) (unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960) ("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present.").  The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts."  Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968).  The Tenth Circuit has noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship.  See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301.  In McEntire v. Kmart Corp., when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court granted the

defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements." 2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 300-02). Further, in Thompson v. Intel Corp., the Court permitted the defendant, Intel Corp., to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met. See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 C. Wright & A. Miller, Federal Practice and Procedure § 3733, at 651-659 (4th ed. 2009)(footnotes omitted). Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction." 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013). Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a preponderance of the evidence. See Carrillo v. MCS Indus., Inc., No. CIV 12-0573, 2012 WL 5378300, at *14 (D.N.M. Oct. 15, 2012)(Browning, J.)(permitting party to amend its notice of

removal when the removing party did "not assert[] a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the . . . Amended Notice of Removal provide[d] greater detail regarding the same basis for jurisdiction asserted in the . . . Notice of Removal"). Cf. New Mexico ex rel. Balderas v. Valley Meat Co., No. CIV 14-1100 JB/KBM, 2015 WL 3544288, at *25 (D.N.M. May 20, 2015)(Browning, J.)(denying amendment when it sought to assert a new jurisdictional basis that was not raised in the notice of removal).

4.      **Fraudulent Joinder.**

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction. See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907 JB/WPL, 2013 WL 5934411, at *14-17 (D.N.M. Sept. 30, 2013)(Browning, J.). A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule. "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted). "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vazquez, J.). The Supreme Court has stated: "Merely to traverse the allegations upon

which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914). The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished).

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished)("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.). Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.

Actual fraud -- <u>e.g.</u>, a plaintiff colluding with a nondiverse defendant to defeat removal[11] -- suffices to establish fraudulent joinder, but it is not required.  <u>See McLeod v. Cities Serv. Gas Co.</u>, 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available.").  In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists."  378 F.2d at 882 (quoting <u>Dodd v. Fawcett Pubs., Inc.</u>, 329 F.2d 82, 85 (10th Cir. 1964)).  In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit found fraudulent joinder, because the joined party's non-liability was "established with complete certainty upon undisputed evidence."  378 F.2d at 882.  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  <u>Smoot v. Chi., Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882.  In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the plaintiff died when his car collided with a freight train.  <u>See</u> 378 F.2d at 881.  The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant.  <u>See</u> 378 F.2d at 881.  It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him."  378 F.2d at 881.

---

[11]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, <u>see</u> 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit.  In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alterations in original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced."  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."  203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth Circuit explained

that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  203 F. App'x at 913.

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.  The test has been stated by this court in various terms, even within the same opinion.  For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 317 (5th Cir. 1995)).  The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court."  181 F.3d at 699 (emphasis added).  Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law."  16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."  Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases in original).  The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors America, LCC, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined. 727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5). The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims. See Allen v. Allstate Ins. Co., No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief"). This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further

elaborate on that burden.  2013 WL 2398893, at *3 (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, C.J., joined by Seymour & Bacharach, JJ.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).  In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm.  See 733 F.3d at 983, 987.  The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank.  See 733 F.3d at 983.  The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants.  See 733 F.3d at 983.  The district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract."  733 F.3d at 988.  The Tenth Circuit disagreed with that characterization of Utah law, finding instead that, in the case on which the defendants relied, the Utah Supreme Court "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services."  733 F.3d at 988.  In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm.  Or even that Matheson and his law firm are not somehow

fraudulently joined.  But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle."  733 F.3d at 989.  It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the Smallwood v. Illinois Central Railroad Co. case.  See Dutcher v. Matheson, 733 F.3d at 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.]  If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.  There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants.  Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations omitted)(internal quotation marks omitted).  Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.  Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will obtain a judgment against an in-state defendant.  Cf. Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).  No case sets forth the burden of proof that

applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, see supra note 11 and accompanying text, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate, see, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence."  (citations omitted)).

A less-clear issue -- at least in other courts -- is whether fraudulent joinder permits the removal of actions that have been pending in state court for over a year.  Section 1446(c)(1) provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action . . . ."  28 U.S.C. § 1446(c)(1).  The two district court cases within the Tenth Circuit to address the issue both concluded that fraudulent joinder does not permit the removal of actions that have been pending in state court for over a year, but the district courts issued those opinions before Congress amended § 1446 in 2012 to add the remainder (the omitted portion) of the sentence quoted earlier in this paragraph: "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  See Chidester v. Kaz, Inc., No. CIV 08-0776 TCK/PJC, 2009 WL 2588866, at *3 (N.D. Okla. Aug. 19, 2009)(Kern, J.); Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003)(Eagan, J.).  Outside the Tenth Circuit, the Courts of Appeals have said little, and district courts appear more-or-less evenly split on the issue, with some holding that a case can be removed on the basis of fraudulent joinder after the one-year mark, see Hardy v. Ajax Magnathermic Corp., 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000); Johnson v. Heublein, Inc., 982 F. Supp. 438, 444-45 (S.D. Miss. 1997); Barnett v. Sylacauga Autoplex, 973 F. Supp. 1358, 1367 (N.D. Ala. 1997); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341, 346 (S.D.N.Y. 1996);

Morrison v. Nat'l Ben. Life Ins. Co., 889 F. Supp. 945, 950-51 (S.D. Miss. 1995); Saunders v.

Wire Rope Corp., 777 F. Supp. 1281, 1282-83 (E.D. Va. 1991); Greer v. Skilcraft, 704 F. Supp.

1570, 1582-83 (N.D. Ala. 1989), and others concluding that the fraudulent-joinder doctrine bows

to the one-year limitation, see Codner v. Am. Home Prods. Corp., 123 F. Supp. 2d 1272, 1274

(W.D. Okla. 2000); Hattaway v. Engelhard Corp., 998 F. Supp. 1479, 1481-82 (M.D. Ga. 1998);

Russaw v. Voyager Life Ins. Co., 921 F. Supp. 723, 724-25 (M.D. Ala. 1996); Zumas v. Owens-

Corning Fiberglas Corp., 907 F. Supp. 131, 133-34 (D. Md. 1995); Price v. Messer, 872 F. Supp.

317 (S.D. W. Va. 1995); Norman v. Sundance Spas, Inc., 844 F. Supp. 355, 356-57 (W.D. Ky.

1994); Brock v. Syntex Labs., Inc., 791 F. Supp. 721, 722-23 (E.D. Tenn. 1992); Cofer v.

Horsehead Research & Dev. Co., 805 F. Supp. 541, 543-44 (E.D. Tenn. 1991); O'Rourke v.

Communique Telecomms., Inc., 715 F. Supp. 828, 829 (E.D. Mich. 1989).  Again, however, all

of these cases came before the addition of 28 U.S.C. § 1446(c)(1), which grafted a bad-faith

exception to the one-year limitation, discussed at length later in this opinion.  In Aguayo v.

AMCO Insurance Co., 59 F. Supp. 3d 1225, 1256 (D.N.M. Oct. 31, 2014)(Browning, J.), the

Court concluded that, because § 1446(c)(1)'s bad faith exception is procedural, rather than

jurisdictional, see 59 F. Supp. 3d at 1270 (noting that Congress amended the one-year limitation

to clarify that it is procedural by modeling it after the United States Court of Appeals for the

Fifth Circuit's interpretation in Tedford v. Warner-Lambert Co., 327 F.3d 423, 427 (5th

Cir. 2003)), the exception extends the applicability of the fraudulent joinder doctrine past one

year.  See 59 F. Supp. 3d at 1256.

> The Court concludes that the addition of the bad-faith exception to the one-year
> limitation clarifies that the one-year limitation is procedural, rather than
> jurisdictional, and, thus, extends the applicability of fraudulent joinder doctrine
> past the one-year mark. Thus, defendants may remove a case on fraudulent
> joinder grounds even after it has been pending in state court for more than one
> year.

59 F. Supp. 3d at 1256.

Another less-than-clear issue -- again, at least, in other courts -- that concerns fraudulent joinder is whether it creates an exception to the forum-defendant rule -- which provides that even an action with complete diversity cannot be removed if any defendant is a citizen of the forum state -- in addition to creating an exception to the rule of complete diversity. See 28 U.S.C. § 1441(b)(2). Courts and commentators recite fraudulent joinder as involving the legally unjustifiable naming of a nondiverse party, a party who defeats complete diversity, or a diversity-spoiling party, but, before the Court's opinion in Aguayo v. AMCO Insurance Co., no case addressed whether the doctrine extends to the wrongful naming of a diverse party whose inclusion in the lawsuit nonetheless defeats removal because of the party's status as a citizen of the forum state. See Brazell v. Waite, 525 F. App'x at 884 & n.3 (implying, but not holding or stating clearly, that fraudulent joinder is an exception to the forum-defendant rule, and noting an "apparent lack of ruling from any federal appellate court, and [a] split among district courts, on the issue" (citing Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013))); Hernandez v. Cooper Tire & Rubber Co., No. CIV 12-1399 JWL, 2013 WL 141648, at *2 n.2 (D. Kan. Jan. 11, 2013)("Some courts have extended the fraudulent joinder doctrine to diverse, in-state defendants in light of the forum defendant rule . . . ." (citing Morris v. Mid-Century Ins. Co., No. CIV 12-0578 SEB/DML, 2012 WL 3683540, at *5 (S.D. Ind. Aug. 24, 2012), vacated and remanded sub nom. Morris v. Nuzzo, 718 F.3d 660)). Although the policy justifications behind the fraudulent-joinder doctrine would seem to apply just as strongly to the forum-defendant rule as they do to complete diversity, there is an important legal distinction between the two requirements: complete diversity is a requirement of original subject-matter jurisdiction and is found in § 1332; the forum-defendant rule is unique to removal jurisdiction -- it does not apply to

cases filed in federal court in the first instance -- and is found in § 1441.  See 28 U.S.C.

§§ 1332(a), 1441(b)(2).  Fraudulent joinder, however, applies only in the removal context and

does no work in cases filed in federal court in the first instance.  Thus, in Aguayo v. AMCO

Insurance Co., the Court concluded that the fraudulent-joinder doctrine applies equally to joining

non-diverse parties as it does to joining forum-citizen defendants.  See 59 F. Supp. 3d at 1257.

> As such, the Court sees no principled reason to limit fraudulent-joinder doctrine's
> application to the joining of nondiverse parties to defeat complete diversity, while
> excluding the functionally identical practice of fraudulently joining forum-citizen
> defendants to defeat the forum-defendant rule.  The Court, therefore, construes
> fraudulent-joinder doctrine as permitting removal whenever a plaintiff
> fraudulently joins a party that defeats removal jurisdiction, whether that defeat
> comes by way of complete diversity or the forum-defendant rule.

Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1257.

A district court's order to remand based on a finding of fraudulent joinder is not

reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913

(holding that, because the district court remanded based on its conclusion that it lacked subject-

matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from

reviewing the order).  The fraudulent joinder inquiry on a motion to remand is a subject-matter

jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

### 5.    Procedural Misjoinder.[12]

Rule 20 of the Federal Rules of Civil Procedure provides:

---

[12]The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context.  As the Honorable Martha A. Vasquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vasquez, J.).  The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.  Flores-Duenas v. Briones, 2013 WL 6503537, at *22 n.8.

**(a)**      **Persons Who May Join or Be Joined.**

    **(1)**      **Plaintiffs.**  Persons may join in one action as plaintiffs if:

        **(A)**      they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        **(B)**      any question of law or fact common to all plaintiffs will arise in the action.

    **(2)**      **Defendants.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

        **(A)**      any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        **(B)**      any question of law or fact common to all defendants will arise in the action.

    **(3)**      **Extent of Relief.**  Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded.  The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it.  Professor E. Farish Percy of the University of Mississippi School of Law has explained:

    Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action.  While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of

the spoiler.  Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact.  Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional spoiler.

E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The Eleventh Circuit formulated the doctrine in Tapscott v. MS Dealer Service Corp., and explained its purpose as follows:

Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.  A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted).

The facts of Tapscott v. MS Dealer Service Corp. illustrate the doctrine's operation.  The case involved two proposed state-law class actions, joined together in a single case: (i) a class action in which an Alabama resident alleged that four defendants, including an Alabama resident, had violated various provisions of Alabama fraud and consumer-protection law in connection with the "sale of 'service contracts' on automobiles sold and financed in Alabama," 77 F.3d at 1355; and (ii) a class action in which Alabama alleged three defendants, including Lowe's Home Centers, a North Carolina resident, had violated Alabama consumer-protection law in connection with the sale of retail product, see 77 F.3d at 1355.  The second class action named Lowe's Home Centers as "the putative defendant class representative for a 'merchant' class."  77 F.3d at 1355.  This unified case matched particular plaintiffs "with particular defendants against whom they allege individual claims"; as relevant here, the only two class

representatives for the class action were Alabama residents, and they asserted claims only against Lowe's Home Centers.  77 F.3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and that the claims involved in the car-sales class action were "wholly distinct from the alleged transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only similarity between" the two classes was that they both alleged violations of Alabama statutory law; "[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving [the retail-products plaintiffs and] Lowe's in the putative "merchant" class action.  We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder.  We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear.  The Tenth Circuit recently described the doctrine's status as follows: "It appears that the Fifth Circuit may also accept procedural misjoinder.  No circuit has rejected the doctrine, but the district courts and the commentators are split."  Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739 (citing, for the proposition that the Fifth Circuit accepts the doctrine, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d at 532-33; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002)).  While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case.  Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739.  See 14B Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3723, at 867-77 &

n.122 (3d ed. 2009)(confirming the developing doctrine's unclear status).  The Court, however, has adopted the doctrine and applied it in two cases, although it concluded in both cases that no procedural misjoinder occurred, and both cases thus resulted in remand.  See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196 (D.N.M. 2013)(Browning, J.); Flores-Duenas v. Briones, 2013 WL 6503537.

      **6.**      **The "Bad Faith" Exception to the One-Year Removal Bar for Diversity Cases.**

Since 1988, 28 U.S.C. § 1446 has provided that no case that has been pending more than one year in state court can be removed on the basis of diversity jurisdiction.[13]  On January 6, 2012, Congress put into effect the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA"), which, among other changes, added a bad-faith exception to the one-year limitation.  As a result, the current subsection (c) is almost entirely new; it reads as follows, with the sole sentence of the statute that pre-exists the JVCA underlined:

      **Requirements; removal based on diversity of citizenship.** --

      **(1)**      A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after

---

[13]The one-year limitation applies only to standard diversity jurisdiction under 28 U.S.C. § 1332(a) and not to class actions removed under § 1332(d), which is a part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4-14 ("CAFA").  Although exempting CAFA from the one-year limitation appears to defy the § 1446(c)(1)'s text, which refers to cases brought "on the basis of jurisdiction conferred by section 1332," another section of Title 28 clarifies the issue:

      A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b) (emphasis added).  See Reece v. Bank of N.Y. Mellon, 760 F.3d 771, 775-76 (8th Cir. 2014).

<u>commencement of the action</u>, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

**(2)**   If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that --

    **(A)**   the notice of removal may assert the amount in controversy if the initial pleading seeks --

        **(i)**   nonmonetary relief; or

        **(ii)**   a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

    **(B)**   removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

**(3)**   **(A)**   If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3).[14]

---

[14]Subsection (b)(3) provides:

Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).   The combination of subsection (c)(3)(A)'s new provisions and subsection (b)(3)'s pre-JVCA provisions means that the defendant's thirty-day clock to remove a case starts whenever they have sufficient information -- obtained from anywhere in the case, and not merely from the pleadings or settlement communications -- to conclude that the case meets the amount-in-controversy requirement.

    **(B)**    If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

28 U.S.C. § 1446(c) (underscoring added to show pre-JVCA content).

A plaintiff's "bad faith" can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.[15]   It is clear how the Court should construe (ii) -- the Tenth Circuit's opinion in McPhail v. Deere & Co. has already fleshed out a detailed framework for analyzing the amount-in-controversy requirement, and the JVCA's legislative history indicates that, far from abrogating McPhail v. Deere & Co., Congress intended § 1446(c)'s amount-in-controversy provisions to codify the approach that the Seventh Circuit chartered in Meridian Securities Insurance Co. v. Sadowski and that the Tenth Circuit advanced in McPhail v. Deere & Co., see Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15-16, H.R. 112-10 (2011)(citing only two cases under the heading "Amount in controversy and removal timing," McPhail v. Deere & Co. and Meridian Securities Insurance Co. v.

---

[15]As previously explained, it was unclear before the JVCA's passage whether the common-law doctrine of fraudulent joinder creates an exception to the forum-defendant rule or just to complete diversity.  See supra Law Regarding Removal, Remand, Fraudulent Joinder, Procedural Misjoinder, and Bad Faith Part 4.  The bad-faith exception, however, is statutory, and the statute applies to all cases in which "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  The statute's plain meaning thus includes both the bad-faith joinder of a nondiverse party -- which defeats removal jurisdiction by defeating original diversity jurisdiction -- and the bad-faith joinder of a forum-citizen defendant -- which only defeats removal jurisdiction.  See Aguayo v. AMCO Insurance Co., 59 F. Supp. 3d at 1261 n.15 ("Moreover, as the Court is largely writing on a blank slate in interpreting the bad-faith exception, it sees no reason to read in a nonsensical double standard.").

Sadowski, and stating that the JVCA's amendments "follow the lead of [those] cases" (emphasis

omitted)).[16]   On the other hand, § 1446(c)'s text says nothing at all about (i), and, before the

---

[16]The JVCA's legislative history provides:

Section 103(b)(3)(C) of the bill further amends subsection 1446(c) by inserting two new paragraphs, (2) and (3), to address issues relating to uncertainty of the amount in controversy when removal is sought, e.g., when state practice either does not require or permit the plaintiff to assert a sum claimed or allows the plaintiff to recover more than an amount asserted.   Although current practice allows defendants to claim that the jurisdictional amount is satisfied and remove, several issues complicate this practice.

First, circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied.   The ''sum claimed'' and ''legal certainty'' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it.   Second, many defendants faced with uncertainty regarding the amount in controversy remove immediately -- rather than waiting until future developments provide needed clarification -- out of a concern that waiting and removing later will result in the removal's being deemed untimely.   In these cases, Federal judges often have difficulty ascertaining the true amount in controversy, particularly when removal is sought before discovery occurs.   As a result, judicial resources may be wasted and the proceedings delayed when little or no objective information accompanies the notice to remove.

Proposed new paragraph 1446(c)(2) allows a defendant to assert an amount in controversy in the notice of removal if the initial pleading seeks non-monetary relief or a money judgment, in instances where the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded.   The removal will succeed if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332(a), presently $75,000.

If the defendant lacks information with which to remove within the 30 days after the commencement of the action, the bill adds a new subparagraph 1446(c)(3)(A) to clarify that the defendant's right to take discovery in the state court can be used to help determine the amount in controversy.   If a statement appears in response to discovery or information appears in the record of the state proceedings indicating that the amount in controversy exceeds the threshold amount, then proposed subparagraph 1446(c)(3)(A) deems it to be an ''other paper'' within the meaning of paragraph 1446(b)(3), thereby triggering a 30-day

Court issued its ruling in <u>Aguayo v. AMCO Insurance Co.</u>, no court had attempted to comprehensively define it.  The JVCA's legislative history gives the Court some clue as to the exception's basic nature, but, in answering this question -- what constitutes "bad faith" vis-à-vis improperly joining, or keeping joined, nondiverse parties or forum-citizen defendants -- the Court has staked out its own definition.

---

period in which to remove the action.  The district court must still find by a preponderance of the evidence that the jurisdictional threshold has been met.

In adopting the preponderance standard, new paragraph 1446(c)(2) would follow the lead of recent cases.  <u>See</u> <u>McPhail v. Deere & Co.</u>, 529 F.3d 947 (10th Cir. 2008); <u>Meridian Security Ins. Co. v. Sadowski</u>, 441 F.3d 536 (7th Cir. 2006).  As those cases recognize, defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met.  Discovery may be taken with regard to that question.  In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.  If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

Under proposed subparagraph 1446(c)(3)(B), if the notice of removal is filed more than one year after the commencement of the action, and a finding is made that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding would be deemed bad faith under paragraph (1).

Section 103(b)(4)(A) of the bill inserts a heading for subsection 1446(d).  Section 103(b)(4)(B) makes a technical amendment replacing ''thirty'' with ''30'' each place it appears in section 1446.  Section 103(b)(4)(C) strikes current subsection (e) (a criminal removal provision, which is now codified as part of new section 1454.  Section 103(b)(4)(D) redesignates current subsection (f) as new subsection (e), and inserts a new heading.

<u>Report to the Committee on the Judiciary of the United States House of Representatives</u> § 103, at 15, H.R. 112-10 (2011).

District courts in other Circuits may need to grapple with the extent to which the JVCA codifies the <u>McPhail v. Deere & Co.</u> approach.  The Court, however, is in the Tenth Circuit, and <u>McPhail v. Deere & Co.</u> binds it unless intervening statute or Supreme Court case law invalidates the holding.  The JVCA's legislative history makes it clear that <u>McPhail v. Deere & Co.</u> remains intact.

In Aguayo v. AMCO Insurance Co., the Court became the first federal court to comprehensively construe the new § 1446(c).  There, the Court concluded that the bad-faith exception sets forth a two-step standard.  See Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1262.

> For the reasons explained in the Analysis, the Court construes the bad-faith exception as a two-step standard.  First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera.  Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith.  Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.  The defendant may introduce direct evidence of the plaintiff's bad faith at this stage -- e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal -- but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1262-63.

## ANALYSIS

The Court will grant both the Motion to Amend and the Motion to Remand and will remand the case to state court.  In the Motion to Amend, Defendant Reliable alleges additional facts to support its original jurisdictional theory without alleging a new theory for jurisdiction.  The Motion to Amend, thus, merely cures a technical defect in the Notice of Removal.  Even with the Amended Notice of Removal, however, Defendant Reliable fails to establish that the Court had jurisdiction over the case when the Plaintiffs filed the Complaint.  New Mexico state law governs the timing when Reliable, Inc. converted into Reliable, LLC NM, and because Defendant Reliable cannot show that the requisite filings were made with the New Mexico Secretary of State before the Plaintiffs filed the Complaint, it fails to satisfy its burden of

showing that removal was appropriate.  The Court will, accordingly, remand the case to state court.

## I.    THE MOTION TO AMEND MERELY CURES A TECHNICAL DEFECT WITHOUT ALLEGING A NEW REMOVAL THEORY.[17]

The Motion to Amend merely cures a technical defect in the Notice of Removal without alleging a new removal theory.  The Motion to Amend seeks to amend only one paragraph in the Notice of Removal.  Paragraph 19 states: "None of the members of Reliable LLC (DE) are residents or citizens of the State of New Mexico."  Notice of Removal ¶ 19, at 4.  Reliable wishes to amend paragraph 19 to say: "Reliable LLC has two members, Berkshire Hathaway Automotive Inc. and Reliable Holdco, Inc.  Both members are citizens of the State of Delaware with their principal places of business in Dallas, Texas."  Amended Notice of Removal ¶ 19, at 4. See Motion to Amend ¶ 8, at 3.

The Motion to Amend was filed outside § 1446(b)'s thirty-day period, and, thus, any amendment may not set forth a new jurisdictional theory.  See New Mexico ex rel. Balderas v. Valley Meat Co., 2015 WL 3544288, at *25 ("There are . . . problems with this new [jurisdictional] theory.  First, defendants are not allowed to switch jurisdictional horses midstream.").  If the Motion to Amend does not set forth a new jurisdictional theory, but instead merely corrects defective factual jurisdictional allegations -- i.e., technical defects -- the amendment is permissible.  See Zamora v. Wells Fargo Home Mortg., 831 F. Supp. 2d at 1302-03.

---

[17]In the Procedural Background section, the Court discussed the Motion to Remand before discussing the Motion to Amend, because that was the order in which the parties briefed the issues -- specifically, Defendant Reliable filed the Motion to Amend in response to the Motion to Remand.  The Court, however, will discuss the Motion to Amend first in the Analysis, because the resolution of the Motion to Amend will affect one of the Plaintiffs' grounds for remand that they assert in the Motion to Remand.

Here, the Motion to Amend does not seek to allege a new theory for jurisdiction.  It merely elaborates on allegations that Defendant Reliable already alleged.  The Notice of Removal states that none of Reliable, LLC NM's members are New Mexico citizens, and the Amended Notice of Removal explains who those members are and where they are citizens. Compare Notice of Removal ¶ 19, at 4, with Amended Notice of Removal ¶ 19, at 4.  The amendment is, thus, a technical one whose purpose is "to fully allege facts which satisfy the requirements of diversity jurisdiction."  Williams v. Bd. of Regents of Univ. of N.M., 990 F. Supp. 2d 1121, 1137 (D.N.M. 2014)(Browning, J.).  Accordingly, the Court will permit the amendment and will grant the Motion to Amend.

## II.   DEFENDANT RELIABLE CANNOT SHOW THAT RELIABLE, INC. NO LONGER EXISTED WHEN THE PLAINTIFFS FILED THE COMPLAINT.[18]

Defendant Reliable cannot show that Reliable, Inc. no longer existed when the Plaintiffs filed the Complaint.  As the removing party, Defendant Reliable has the burden of proving that removal was appropriate and that the Court has jurisdiction over the case.  See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  Jurisdiction is determined when the suit is filed.

---

[18]In the Motion to Remand, the Plaintiffs argue that Defendant Reliable's corporate reorganization is a sham to manufacture diversity jurisdiction.  See Motion to Remand at 5.  At the hearing, however, the Plaintiffs conceded that the timing of the reorganization and the filing of the Complaint were a coincidence, and that Reliable did not engage in any nefarious conduct. See Tr. at 25:1-12 (Ball).  The Court agrees with the Plaintiffs.  The Plan of Conversion and the Agreement of Merger were both executed on December 31, 2014 -- over a week before the Plaintiffs filed the Complaint.  Moreover, there is no evidence that, before being served with the Complaint, Defendant Reliable knew that the Plaintiffs would file the Complaint on January 12, 2015.  As the Plaintiffs conceded, there is no evidence that Defendant Reliable had any nefarious purpose in the timing of its reorganization.

> [N]othing in <u>Carden[ v. Arkoma Associates</u>, 494 U.S. 185 (1990),] suggests any change in the well-established rule that diversity of citizenship is assessed at the time the action is filed.  We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events

<u>Freeport-McMoRan, Inc. v. K N Energy, Inc.</u>, 498 U.S. at 860.  Defendant Reliable must, thus, show that, at the time that the Plaintiffs filed the Complaint -- 8:34 a.m. MST -- there was complete diversity between the parties.  Specifically, Defendant Reliable must show that, by 8:34 a.m. MST, Reliable, Inc. had been converted into Reliable, LLC NM and then merged with Reliable, LLC DE.[19]  Because Defendant Reliable cannot show at what time on January 12,

---

[19]A limited liability company's citizenship is that of each of its members.  <u>See</u> <u>Siloam Springs Hotel, L.L.C. v. Century Sur. Co.</u>, 781 F.3d 1233, 1234 (10th Cir. 2015)("Like every other circuit to consider this question, this court concludes an LLC, as an unincorporated association, takes the citizenship of all its members."); <u>Walker v. THI of N.M. at Hobbs Ctr.</u>, 803 F. Supp. 2d 1287, 1326 (N.M. 2011)("A limited liability company is a citizen of every state of citizenship of any of its members.").  If Reliable, LLC NM's members -- or more precisely, as will be shown, its member -- are not New Mexico citizens, and if Reliable, Inc. had only converted to Reliable, LLC NM, but had not merged with Reliable, LLC DE when the Plaintiffs filed the Complaint, then the Court would have diversity jurisdiction over the case.  Reliable, however, does not assert the citizenship of Reliable, LLC NM's members.  Reliable contends only that Reliable, LLC DE's members are not New Mexico citizens, without stating the citizenship of Reliable, LLC NM's members.  <u>See</u> Amended Notice of Removal ¶ 19, at 4.

Section 53-19-8 of the New Mexico Statutes Annotated, which governs what information a limited liability company's Articles of Organization must contain, does not require the Articles of Organization to disclose the identity of its members, but it requires the Articles of Organization to disclose whether it has only a single member.  <u>See</u> N.M. Stat. Ann. § 53-19-8.  Similarly, § 53-19-60, which governs the conversion of a corporation into a limited liability company, does not require the newly formed limited liability companies to disclose the identity of its members.  <u>See</u> N.M. Stat. Ann. § 53-19-60.  In accordance with §§ 53-19-8 and 53-19-60, while the Plan of Conversion and the Articles of Organization disclose that Reliable, LLC NM is a single-member limited liability company, they do not disclose the identity or citizenship of the member.  <u>See</u> Plan of Conversion at 1-4; Articles of Organization at 1-2.  All the Court knows, therefore, about Reliable, LLC NM is that it has one member, but the Court does not know the citizenship of that member.  Because Reliable has the burden of establishing diversity jurisdiction, if Reliable, Inc. had converted to Reliable, LLC NM, but had not merged with Reliable, LLC DE, at the time the case was filed, the Court would conclude that Reliable has not carried its burden of proof and would find that it lacked diversity jurisdiction.  In any case, because Defendant Reliable cannot even establish that Reliable, Inc. had dissolved before the

2015, it filed the necessary documents to convert Reliable, Inc. into Reliable, LLC NM, it argues that Delaware law governs the time in which Reliable, Inc. ceased to exist.   See Tr. at 22:16-23:11 (Salazar-King).   Defendant Reliable's argument suffers from a number of fatal flaws.

First, Defendant Reliable is wrong that Delaware law governs the timing in which a New Mexico corporation dissolves.   The Restatement (Second) of Conflict of Laws states: "Whether the existence of a corporation has been terminated or suspended is determined by the local law of the state of incorporation."   Restatement (Second) of Conflict of Laws § 299.   The Supreme Court has held that the state of incorporation's laws govern whether a corporation is still in existence.

> [C]orporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation.   The matter is really not procedural or controlled by the rules of the court in which the litigation pends.   It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being.

Okla. Natural Gas Co. v. Oklahoma, 273 U.S. 257, 259-60 (1927).   The Tenth Circuit has similarly held that "the question, as to whether a corporation is continued for the purpose of prosecuting or defending civil suits or criminal actions, depends upon the law of the state of its incorporation."   United States v. Safeway Stores, Tex., 140 F.2d 834, 836 (10th Cir. 1944).   See Hood Bros. Partners, L.P. v. USCO Distrib. Servs., Inc., 140 F.3d 1386, 1388 (11th Cir. 1998)("The law of the state of incorporation ordinarily governs the legal effect of a corporation's dissolution, including the questions of the corporation's status, rights, and

---

Plaintiffs filed the Complaint, the Court need not base its holding on a hypothetical situation in which Reliable, LLC NM is the proper party to the suit.

liabilities."). Accordingly, because Reliable, Inc. is a New Mexico corporation, New Mexico law governs its dissolution and governs when it ceased to exist as a corporate entity.

Section 53-19-60 governs the conversion of a corporation into a limited liability company. See N.M. Stat. Ann. § 53-19-60(A) ("A corporation . . . may be converted to a limited liability company pursuant to this section."). It states that, once the Articles of Organization are filed with the New Mexico Secretary of State, the corporation's Certificate of Incorporation is canceled, and the conversion takes effect, unless the Articles of Organization provide that conversion is to take effect on a later date. See N.M. Stat. Ann. § 53-19-60(E) ("In the case of a corporation . . . , the filing of articles of organization pursuant to Subsection D of this section[20] cancels its certificate of incorporation . . . as of the date the conversion took place."); id. § 53-19-60(F) ("A conversion takes effect when articles of organization are filed with the commission [secretary of state] or at any later date specified in the articles of organization." (brackets in original)). Because Reliable, Inc. -- a New Mexico corporation -- was converted into Reliable, LLC NM -- a New Mexico limited liability company -- under § 53-19-60(E), Reliable, Inc. ceased to exist as a corporate entity when the conversion took effect, which, under § 53-19-60(F), was the time at which the Articles of Organization were filed with the New Mexico Secretary of State.

The Articles of Organization are marked as filed on January 12, 2015, but do not contain a time stamp. See Articles of Organization at 1-2. Consequently, Reliable, LLC NM came into existence -- and Reliable, Inc. ceased to exist -- sometime on January 12, 2015, but the Court cannot be sure of the exact time. Section 53-19-60(F) provides that the conversion can take

---

[20]Section 53-19-60(D) provides that Articles of Organization must be filed with the Secretary of State and states what information the Articles of Organization must contain. See N.M. Stat. Ann. § 53-19-60(D).

effect on a date other than the date of filing, if the date is specified in the Articles of Organization.  See N.M. Stat. Ann. § 53-19-60(F).  Defendant Reliable argued, at the hearing, that Reliable, Inc. ceased to exist on December 31, 2014 -- the date on which the Plan of Conversion was executed.  See Tr. at 13:6-13 (Salazar-King, Court).   While the Articles of Organization do no explicitly state that they are to take effect on December 31, 2014, they are dated December 31, 2014.  See Articles of Organization at 2.  Section 53-19-60(F) permits the date of conversion to be only a later date from the date of filing, however, and not an earlier one.  See N.M. Stat. Ann. § 53-19-60(F) ("A conversion takes effect when articles of organization are filed with the commission [secretary of state] or at any later date specified in the articles of organization."  (emphasis added)).  The earliest date on which the conversion could take effect is thus January 12, 2015 -- the date of filing.  Accordingly, because Reliable, Inc. was converted to Reliable, LLC NM sometime on January 12, 2015, but Defendant Reliable is unable to show the exact time, Defendant Reliable has not carried its burden of proving that Reliable, Inc. ceased to exist before the Plaintiffs filed the Complaint.

Furthermore, even if Reliable, Inc. converted into Reliable, LLC NM before the Plaintiffs filed the Complaint, Defendant Reliable must still show that Reliable, LLC NM complied with New Mexico law to merge with Reliable, LLC DE.  Section 53-16-62 governs the merger of New Mexico limited liability companies with other corporate entities, including foreign limited liability companies.  See N.M. Stat. Ann. § 53-19-62(A) ("[A] limited liability company may be merged with or into one or more . . . foreign limited liability companies . . . .").  Section 53-19-62(E) states that the "merger is effective upon the filing of the articles of merger with the commission [secretary of state] or at such later date as the articles may provide."  N.M. Stat. Ann. § 53-19-62 (brackets in original).  Once the merger takes effect, the separate existence of

the non-surviving entity terminates.  See N.M. Stat. Ann. § 53-19-62.2(A) ("When a merger

takes effect . . . the separate existence of each limited liability company and other entity that is a

party to the merger, other than the surviving entity, terminates . . . .").  Under New Mexico law,

therefore, the merger between Reliable, LLC NM and Reliable, LLC DE did not take effect until

Reliable, LLC NM filed the Articles of Merger with the New Mexico Secretary of State.

Reliable, LLC NM, apparently aware of § 53-19-62's requirements, filed the Articles of

Merger with the New Mexico Secretary of State on January 12, 2015.  See Articles of Merger

at 1.  If, as Defendant Reliable now asserts, it needed to file documents only with the State of

Delaware, and not with the State of New Mexico, to effectuate the merger -- in contradiction

with § 53-19-62(E) -- Defendant Reliable did not need to file the Articles of Merger with the

New Mexico Secretary of State.  The Court suspects that Defendant Reliable filed the Articles of

Merger with the New Mexico Secretary of State because it knew that § 53-19-62 required it.

Defendant Reliable's actions show that it is aware of § 53-19-62's requirement and that it is,

only now that it would rather be in federal court than state court, attempting to argue that § 53-

19-62 does not affect Reliable, LLC NM's existence.  In spite of Defendant Reliable's argument

that contradicts its own actions, New Mexico law applies, and it requires Articles of Merger to be

filed with the New Mexico Secretary of State to effectuate a merger with a foreign limited

liability company.

As with § 53-19-60(F), § 63-19-62(E) states that a merger may be effective "at such later

date as the articles may provide."  N.M. Stat. Ann. § 53-19-62(E).  The Articles of Merger

provide that the merger is to be effective on January 12, 2015.  See Articles of Merger at 1.  If

they stated another date, however, it would still have to be a "later date" than the date of filing.

N.M. Stat. Ann. § 52-19-62(E).  Accordingly, the effective date is January 12, 2015, yet the exact time the merger took effect is still unknown.

Defendant Reliable cites to a Ninth Circuit case and a Seventh Circuit case for the proposition that, once a corporation merges with a Delaware corporation, it is a Delaware citizen for diversity purposes.  See Remand Response at 6.  In both cases, however, the law of the state from which the merging corporation was incorporated provided that, after the merger, the corporation into which it merged is the surviving entity for citizenship purposes.  See Hoefferle Truck Sales, Inc. v. Divco-Waye Corp., 523 F.2d at 548-49; Meadows v. Bicrodyne Corp., 785 F.2d at 671-72.  In contrast, § 53-19-62.2(a) provides that the existence of the non-surviving entity -- Reliable, LLC NM -- terminates only when the merger takes effect, and § 52-19-62(E) states that the merger will take effect only after the Articles of Merger are filed.  Thus, under New Mexico law, Reliable, LLC NM did not terminate its existence until the Articles of Merger were filed with the New Mexico Secretary of State.  Because Defendant Reliable can show only that the Articles of Merger were filed on January 12, 2015, and not that they were filed before 8:34 a.m. MST, Defendant Reliable fails to establish that Reliable, LLC NM merged with Reliable, LLC DE before the Plaintiffs filed the Complaint.

Finally, even if Delaware law could unilaterally effectuate a merger between Reliable, LLC NM and Reliable, LLC DE -- which it cannot -- Defendant Reliable fails to show that Reliable, Inc. -- a New Mexican citizen for diversity purposes -- dissolved before the Plaintiffs filed the Complaint.  The Agreement of Merger, the Articles of Merger, and the Certificate of Merger refer only to the merger between Reliable, LLC NM and Reliable, LLC DE, and not to the dissolution and conversion of Reliable, Inc.  Defendant Reliable asserts that the time stamps on the Delaware filings provide sufficient evidence of the Court's jurisdiction, regardless when

the New Mexico filings were made.  This argument, laid out plainly, however, shows its lack of logic.  Defendant Reliable is arguing that an agreement between two limited liability companies and filings in Delaware that refer only to those limited liability companies can somehow lead to the dissolution of a New Mexico corporation that is not a party to the agreement, is not referenced in the agreement, and is not referenced in the filings.  If this were the law, it would lead to undesirable results.  Once two limited liability companies merged, people could be left wonder whether the merger dissolved a corporation in another state that is not referenced in the merger agreement or in the filings.  This rule would undermine the stability of the states' corporate systems.

Instead, as the Supreme Court has stated, the state of incorporation's law governs the dissolution of corporations.  See Okla. Natural Gas Co. v. Oklahoma, 273 U.S. at 259-60.  New Mexico law requires certain procedures to be followed before a corporation can be dissolved and converted into a limited liability company, see, e.g., N.M. Stat. Ann. § 53-19-60, and before a limited liability company can be merged with a foreign limited liability company, see, e.g., N.M. Stat. Ann. § 53-19-62.  Defendant Reliable appears to have followed these procedures.  See Articles of Organization at 1-2; Articles of Merger at 1-3.  It is those New Mexico procedures that govern when Reliable, Inc. ceased to exist as a corporation and when Reliable, LLC NM merged with Reliable, LLC DE.

Defendant Reliable argues that, because Reliable, LLC NM merged with Reliable, LLC DE at 8:23 a.m. EST, under the logical series of events, Reliable, Inc. must have converted to Reliable, LLC NM at that time.  See Tr. at 19:15-24 (Salazar-King).  This argument contradicts Defendant Reliable's statements at the hearing, where it stated that, as of 7:59 a.m. MST, Reliable, Inc. still existed, because the New Mexico Secretary of State's office did not open until

8:00 a.m. MST.  See Tr. at 18:18-20 (Salazar-King, Court)("THE COURT: . . . But say [the office] open[s] at 8:00.  At 7:59, [Reliable, Inc.] still existed.  MS. SALAZAR-KING:  That's correct.").  Contrary to Defendant Reliable's logical-series-of-events argument, Reliable, Inc. could not have dissolved at 8:23 a.m. EST -- 6:23 a.m. MST -- because the New Mexico Secretary of State's office did not open for another hour and a half.  See Contact Us, New Mexico Secretary of State, http://www.sos.state.nm.us/Contact_Us.aspx (stating that hours are from 8:00 a.m. to 5:00 p.m.).  While it may seem conceptually odd that the State of Delaware merged a Delaware limited liability company with a not-yet-existent New Mexico limited liability company, this scenario is what happened, because, based solely on the New Mexico Secretary of State's office hours, Reliable, LLC NM could not have existed at 8:23 a.m. EST.

Defendant Reliable's plea that the Full Faith and Credit clause, U.S. Const. art. IV, § 1, requires the Court to apply Delaware law is of no avail.  When Defendant Reliable uses the term full faith and credit, it means the law that is most favorable to its position, and not the law that the Supreme Court and the Constitution dictate the Court use.  The Supreme Court has already made clear that the state of incorporation's laws govern issues of dissolution.  See Okla. Natural Gas Co. v. Oklahoma, 273 U.S. at 259-60.  Moreover, the Supreme Court has held that the Full Faith and Credit clause requires the state of incorporation's law to interpret and determine the enforceability of rights under a corporation's articles of incorporation.  See Order of United Commercial Travelers of Am. v. Wolfe, 331 U.S. 586, 614 (1947).  See also Bolt v. Merrimack Pharms., Inc., No. CIV 04-0893 WBS/DAD, 2005 WL 1458722, at *3 (E.D. Cal. June 17, 2015)(recognizing that the "full faith and credit clause requires controlling effect to be given to the law of the state of incorporation in interpreting and determining the enforcibility of rights under articles of incorporation and by-laws"); McDermott Inc. v. Lewis, 531 A.2d 206, 218 (Del.

1987)(holding that the Full Faith and Credit clause requires the application of the internal-affairs doctrine -- the doctrine requiring the state of incorporation's laws to govern internal corporate relationships).  Accordingly, if the Full Faith and Credit clause were to dictate any state's laws to apply, it would require the application of New Mexico's laws -- Reliable, Inc.'s state of incorporation -- and not Delaware's.

Based on the relevant evidence -- the New Mexico filings -- Defendant Reliable is unable to show that it was no longer a New Mexico citizen before the Plaintiffs filed the Complaint.[21] Accordingly, Defendant Reliable has not carried its burden of proof, and the Court will grant the Motion to Remand and remand the case to state court.

**IT IS ORDERED** that: (i) the Plaintiffs' Opposed Motion to Remand, filed May 6, 2015 (Doc. 20), is granted; (ii) Defendant Reliable, LLC's Motion to Amend Notice of Removal to the United States District Court for the District of New Mexico, filed May 8, 2015 (Doc. 21), is granted; and (iii) the case is remanded to Santa Fe County, First Judicial District Court, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

---

[21]The Court is cognizant of Defendant Reliable's frustration that the New Mexico filings are not time stamped, which would allow it to affirmatively show whether it filed them before the Plaintiffs filed the Complaint.  The New Mexico Secretary of State might better serve the business community if she time stamped corporate filings.  Defendant Reliable, however, had other means of establishing the time in which the documents were filed, including an affidavit from the corporate officer stating the time at which he or she filed the New Mexico filings. Defendant Reliable has presented no such evidence.

*Counsel:*

Daniel P. Buttram
Whitener Law Firm, P.A.
Albuquerque, New Mexico

--and--

Wesley T. Ball
Kaster Lynch Farrar & Ball, LLP
Houston, Texas

      *Attorneys for the Plaintiffs*

Michael Clemens
Quiana Aurelia Salazar-King
Butt Thornton & Baehr PC
Albuquerque, New Mexico

      *Attorneys for Defendant Reliable, Inc.*

Eric R. Burris
Brownstein Hyatt Farber Schreck
Albuquerque, New Mexico

--and--

Steven D. Jansma
Troy Vancil
Norton Rose Fulbright
San Antonio, Texas

      *Attorneys for Defendant Cooper Tire & Rubber Company*

Richard E. Hatch
Todd Rinner
Rodey, Dickason, Sloan, Akin, & Robb P.A.
Albuquerque, New Mexico

      *Attorneys for Defendant Ford Motor Company*